## BOWEN v. ATLANTIC AND FRENCH BROAD VALLEY R. R. COMPANY.

### MAJOR v. THE SAME.

1. Where incompetent testimony is received without objection at the trial, no ground is thereby afforded for a motion for a new trial.
2. On appeal .to the Circuit Court from the assessment of damages for a right of way to a railroad company, an issue was framed and submitted to a jury in the Circuit Court in words "how much compensation is the appellant entitled to for the right of way through his lands." *Held*, that the submission was sufficiently specific to justify the jury, in accordance with the terms of the statute, in estimating not only the value of the land taken, but also such special damage as the construction of the road through his land would cause to the land-owner.
3. There would seem to be no error in permitting witnesses to give general estimates of the damages, but no objection to such testimony having been made at the trial, it cannot be raised here.
4. The Circuit Judge committed no error in charging the jury that in estimating the special damage done to the land-owner by the condemnation of a right of way through his lands, they might consider inconvenience of a permanent nature, the rattle of the train, blow of the whistle, smoke of the engine, etc.
5. This Court cannot consider exceptions alleging excessive damages in a verdict.

Before ALDRICH, J., Pickens, January, 1882.

Reese Bowen against the Atlantic and French Broad Valley Railroad Company and Elizabeth Major against the same. The opinion states the case, but the charge of the judge to the jury in the Circuit Court should be given in full. It was as follows:

" The law of this case, to which you are to apply the facts, is contained in the act regulating the construction of these great highways of travel and trade. The legislature recognizing the vast importance of developing the resources of the State, has .conferred upon these railroad corporations great privileges. They are allowed to pass over the freehold of a citizen, raze his homestead to the ground, or dig up the soil which covers the bones of his ancestors, his wife and his children, the only com·

pensation being the value of the land covered or subverted, and the actual damage which the proprietor may sustain. While this policy is rendered necessary for the convenience of the community and the development of the common interest of the whole people, we must not lose sight of the fact that it may, in individual cases, operate as a great hardship. Hence the legislature has wisely left it to the jury to say what is the actual damage each proprietor has sustained, by the condemnation of his land for the purposes of the highway. As I said yesterday in the trial of the Bowen case, before the jury, there is a difference of opinion between witnesses and counsel as to what is *actual damages.* On the one hand it is contended that actual damages is only that which can be measured by dollars and cents, the market value per acre of the land, while on the other hand it is insisted that a continuing inconvenience which puts the proprietor to hourly and daily annoyance is actual damage, which will be measured by the jury according to the circumstances attending each particular case. If the railroad runs through your house, where your ancestors lived and died, your children were born, and which is hallowed by all the associations that cluster around the hearthstone and linger under the roof-tree, is the actual damage only the property destroyed? And shall it be said if the railroad runs in front or rear of your home, disturbing your family, night and day, with the scream of the whistle, the smoke of the engine, the rattle of the train, destroying the garden your wife and daughters have spent years in tending and beautifying, that the only damage then is the value of the land? I think not. You may as well say that a picture painted by Rubens, or a statue modelled by our own Powers, has no actual value, because the one is a mere square of canvas, in which is painted in beautiful colors, with artistic skill, a poetic idea; the other a mere block of marble out of which is chiselled an exquisite figure of the ideal man or woman.

And so when bottom land has been brought into cultivation, it is not the cost of the ditch obstructed, or the value of the soil that has been subverted, but the injury done to the whole tract by interrupting the drainage and interrupting the free

passage over the field. So when a field is divided by an embankment or an excavation, you will not only consider the value of the land over or through which the road is constructed, but the actual loss to the proprietor, in perpetuity, in cultivating his crops, hauling in and out, the loss of time in shortening his rows, and like continuing inconveniences. If such a continuing inconvenience can be estimated in money, that is the actual damage the proprietor has sustained. In making that estimate you must exercise your judgment as reasonable, conscientious, honest men, considering the road as completed. You are not to consider or suppose a trestle instead of an embankment, but render your verdict for a completed road. Your inquiry is not what is the general benefit to the whole State and county, but what is the actual damage to the individual claimant?

So you will perceive that while these great enterprises are to be fostered and encouraged, because they develop the resources of the State and contribute largely to the prosperity, convenience and happiness of the people, yet they do sometimes injure individual interests and destroy the enjoyment of individual property. I know of cases on the Port Royal and Savannah and Charleston Railroads where the drainage of valuable plantations, effected by a large outlay of money, has been entirely destroyed by the construction of these roads. The road should not be stopped for this, but the individual owner should be compensated. To say the market value of the acres used by the road is the actual damage is merest mockery.

And so I charge you that a railroad which puts a proprietor to perpetual inconvenience in the management of his affairs, or continually disturbs the peace of his family, is actual damage, which can be measured by the circumstances attendant on each case, to be determined by the testimony of witnesses familiar with the facts and location. Speculative damages cannot be accorded. You are not to pay a claimant the value of his whole plantation because a railroad runs through it, but you are to allow him the value of the land occupied, and compensation for the actual inconvenience to which he is subjected. The law makes you judges of the facts, as reasonable men, always keeping in mind the public interest and the individual

right. You are not to favor the corporation because it is conferring a great public benefit, nor are you to enrich the proprietor from a mere sentiment, or because the corporation is able to pay, but you are to dispense abstract justice as between man and man.

Mr. *R. A. Child*, for appellant.

Messrs. *Norton, Keith & Hollingsworth*, contra.

October 6, 1882. The opinion of the Court was delivered by

MR. JUSTICE McIVER.—These two cases involve the same questions, and will be considered together. They were proceedings originally instituted by the appellant here for the purpose of acquiring the right of way over the lands of the respondents, under the provisions of the Act of 1868, incorporated in Chap. LXIII. of the General Statutes, p. 352. The respondents here not being satisfied with the verdict of the jury organized by the Clerk of the Court, under section 76 of that chapter, appealed to the Circuit Court, when the following issue was made up and tried in that Court, to wit: "How much compensation is the appellant, Reese Bowen, entitled to for the right of way through his lands, which have been condemned and taken by the Atlantic and French Broad Valley Railroad Company?"

From the judgment rendered on the verdict found upon that issue, the Railroad company appealed to this Court upon the following grounds: "1. Because his Honor erred in allowing the actors to prove special damage when no such damage was contained in the issue submitted to the jury. 2. Because special damage cannot be proved without a special allegation in the pleadings of such damage, and his Honor erred in allowing such proof, when no allegations of special damage had been anywhere made in the pleadings. 3. Because his Honor erred in allowing witnesses to testify that if it was their land they would not have the railroad to pass over it for $——. 4. Because his Honor erred in allowing the witnesses to testify that the actors had been damaged $—— without requiring them to state

37

specially the damage. 5. Because his Honor erred in charging the jury that any inconvenience of a permanent nature, however small, was special damage, and might be considered by them in making up their verdict. 6. Because his Honor erred in charging the jury that the rattle of the train, the blow of the whistle, the smoke of the engine, etc., were special damage, and might be considered by them in making up their verdict. 7. Because that under the issue submitted, the jury could only consider the compensation to be paid the actors for the right of way, that is, the actual value of the land taken up by the railroad, and his Honor erred in charging them that they could bring in a verdict for special damages. 8. Because the damages given by the jury are excessive."

It does not appear that any objection was made to any of the testimony offered at the trial, and therefore such of the grounds of appeal, to wit, the first, second, third and fourth, as are based upon objections to the competency of testimony, cannot be sustained. The rule is well settled that where incompetent testimony is received, without objection, at the trial, it will afford no ground for a motion for a new trial. *State* v. *Rankin*, 3 *S. C.* 448; *Burris* v. *Whitner*, 3 *S. C.* 512; *Powers* v. *McEachern*, 7 *S. C.* 299. This rule is not only based upon direct authority, but has the support of reason also; for, as is well said, in *Burris* v. *Whitner, supra,* "It would be unfair to allow a party to postpone his objection as to competency until after the testimony has been given; for, in that case, he would be enabled to retain the evidence if it enured to his advantage, and to exclude it if it made against him. Such speculative advantages are discountenanced by the courts."

The Act of 1878, 16 *Stat.* 698, does not affect this rule; for that act simply allows exceptions to be taken " to the *rulings* of the presiding judge," at any time within ten days after the rising of the Court; but where incompetent testimony is received without objection, the Judge makes no ruling, and there is therefore no room for an exception. In *Fripp* v. *Williams, Birnie & Co.*, 14 *S. C.* 508, the rule has been recognized and applied since the passage of the Act of 1878; and it has also been recognized in *Thompson* v. *Brannon*, 14 *S. C.* 549. It

is clear, therefore, that even if the testimony assailed in the first four grounds of appeal were incompetent, appellant has lost the opportunity of availing itself of the benefit of any of these grounds, by failing to object to the testimony when it was offered.

But, as will presently be seen, we do not regard the testimony as incompetent. The appellant contends that, under the issue submitted to the jury, they were restricted in their inquiries to the question as to what was the value of the land actually appropriated and used as a right-of way, and that they could not give any damages beyond this, and hence that testimony tending to show any other damage was incompetent. The issue which the jury were called upon to determine was, how much compensation was the land-owner entitled to for *the right of way taken* by the railroad company, not merely for *the land* taken. Their inquiry, therefore, was, what would compensate the land-owner for the injury done to him by allowing the railroad company to take and use the right of way in question?

The mere naked value of the strip of land over which the road-bed was constructed would in most if not in all cases afford very inadequate compensation for the injury done; and hence to determine the amount of compensation it would be necessary to consider other elements than that of the naked value of the land. This was, manifestly, the idea of the legislature, for by the express terms of the act under which this proceeding was instituted, provision is made for estimating the amount of compensation not only by reference to the value of the land actually taken, but also by reference to the special damage which the land-owner may sustain by reason of the construction of the road through his lands. The Act, in effect, defines the term "compensation" to be the value of the land together with such special damage as may be sustained by the land-owner, by reason of the construction of the road through his lands.

In section 77, the jury are required to determine the question of compensation by inspecting the premises and taking testimony "in reference to the construction of the proposed

highway, and the quantity of land which shall be required therefor ; and irrespective of any benefit which the owner may derive from the proposed highway, and with respect alone to the quantity and value of the land which may be required, and to the special damage which the owner may sustain by reason of the construction of the highway through his lands, they shall ascertain *the amount of compensation* which shall be made to the owner thereof." The only legitimate construction of this language is that the jury in ascertaining the amount of compensation must disregard any benefit that may accrue to the land-owner from the construction of the road, and base their estimate not only upon the value of the land taken, but upon that *and* such special damage as the owner may sustain by reason of the construction of the road through his land.

Hence when the issue submitted to them in this case required them to determine " how much compensation" the land-owner was entitled to for the right of way, they should, in accordance with the terms of the act, have looked not only to the value of the land taken, but also to such special damage as may have been done to the land-owner by reason of the construction of the road through his lands, and there was no necessity for the order to specifically direct them to estimate the special damage, inasmuch as the direction to determine the amount of compensation necessarily included an inquiry into the special damage. The testimony as to the special damage was, therefore, in our judgment entirely competent, and absolutely necessary to enable the jury to determine properly the issue submitted to them. The objection that the testimony as to special damage consisted of general estimates, without specifications as to the particular items of damage, not having been made at the trial cannot avail the appellant at this stage of the case. Besides, we do not think it can be said that the testimony upon the subject consisted only of general estimates, for most of the witnesses did go into details ; and it was for the appellant, by his cross-examination, to test the correctness of such general estimates as were made. Indeed, we do not see how damages of this character could be ascertained in any other way than by the introduction of such testimony as was adduced in these cases; and this kind of testi-

mony seems to have been received with approval in the cases of the *G. & C. Railroad Company* v. *Partlow*, 5 *Rich.* 428, and *White* v. *Charlotte & So. Ca. Railroad Co.*, 6 *Rich.* 47. We do not understand that the Judge charged the jury exactly as is alleged in the fifth and sixth grounds of appeal. As we understand the charge, it was, in effect, that the jury were not to confine their inquiry simply to the value of the land taken, but that they might take into consideration the several matters alluded to in these grounds of appeal, and give, in addition to the value of the land, such special damage as in their judgment would compensate the land-owner for the injury done to him by the taking of the right of way ; and in this we see no error.

The eighth ground of appeal cannot be sustained. Whether damages are excessive depends upon a consideration of the facts, and with these we have no power to interfere. This has been distinctly determined, and must be regarded as definitely settled. *Brickman* v. *South Carolina Railroad Company*, 8 *S. C.* 173 ; *Steele* v. *C. C. & A. R. R. Co.*, 11 *S. C.* 589.

The judgment of this Court is that the judgment of the Circuit Court in both of the cases above stated be affirmed.